UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deborah Dorholt f/k/a Deborah Larsen,

        Plaintiff,

v.

Hartford Life and Accident Insurance Company,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 05-602 ADM/JSM

_____

William J. Marshall, Esq., Babcock Neilson Mannella Klint P.L.L.P., Anoka, MN, argued on behalf of Plaintiff.

Eric C. Tostrud, Esq. and Carmen B. Copher, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, argued on behalf of Defendant.

_____

## I. INTRODUCTION

On December 2, 2005, oral argument before the undersigned United States District Judge was heard on Plaintiff Deborah Dorholt f/k/a Deborah Larsen's ("Plaintiff" or "Dorholt") Motion for Summary Judgment [Docket No. 18] and Defendant Hartford Life and Accident Insurance Company's ("Defendant" or "Hartford") Motion for Summary Judgment [Docket No. 13]. Plaintiff originally filed suit in state court, alleging breach of contract based on Defendant's denial of her claim for long term disability benefits. Defendant removed the action to federal court alleging the state law claim is preempted by the Employee Retirement Income Security Act ("ERISA") [Docket No. 1]. For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

## II. BACKGROUND

Dorholt worked as a paramedic at North Memorial Health Care ("NMHC") from March

2, 1987 to July 6, 1999. Tostrud Aff. [Docket No. 16] at HART00151. During her employment with NMHC, Dorholt participated in NMHC's long term disability plan, insured by Hartford. The Plan gives Hartford the "discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Id. at HART00191. Hartford defines disability as an injury that prevents the employee "from performing one or more of the Essential Duties of Your Occupation." Id. at HART00168. After twenty-four months of coverage, the definition of disability narrows, requiring the employee to be "prevented from performing one or more of the Essential Duties of Any Occupation." Id. "Any Occupation means an occupation for which you are qualified by education, training or experience" and that meets a minimum "earnings potential" requirement set forth in the plan. Id.

On July 6, 1999, Dorholt was injured in a car accident. Id. at HART00829. Dorholt, while wearing her seatbelt, was stopped at an intersection when another car collided into the rear of her car. Id. She experienced head and back pain, and visited a chiropractor, Doctor Martin Eng ("Dr. Eng"), after the accident. Id. at HART00829, 00841. Dr. Eng ultimately diagnosed Dorholt as having "a severe whiplash sprain/strain and a disc herniation in the low back." Id. at HART00849, 00870. As a result of her injury, Dorholt did not return to work.[1] Id.

Lumbar spine and cervical MRIs conducted on August 26 and 30, 1999, revealed multi-level disc degeneration. Id. at HART00867-00868. On September 9, 1999, Doctor Susan Evans ("Dr. Evans"), a neurologist, evaluated Dorholt, and determined that Dorholt suffered from cervical and lumbar strains. Id. at HART00791. At a follow-up visit on September 30, 1999,

---

[1] Dorholt's car accident was not the first incident that caused injury to her back. Dorholt hurt her back several times during her career as a paramedic, causing her to miss work or return to work with restrictions. Id. at HART00261-00316.

2

after further testing, Dr. Evans diagnosed cervical and lumbar radiculopathy.  Id. at HART00813.

On September 9, 1999, forty-one year old Dorholt applied for long term disability benefits.  Id. at HART0904.  On November 15, 1999, Hartford approved Dorholt's application for long term disability benefits and notified Dorholt of her obligation to periodically provide documentation of continued disability.  Id. at HART00807.  Dorholt continued to be seen by Drs. Eng and Evans.  On March 2, 2000, Dr. Eng completed an Attending Physician's Statement of Continued Disability ("APS") form and restricted Dorholt from lifting/carrying more than twenty pounds or pushing, pulling, or reaching/working overhead.  Id. at HART00788.  On July 5, 2000, Dr. Evans filled out a Physical Capacities Evaluation ("PCE") form, indicating that Dorholt was capable of sedentary, part-time work, and could sit for two hours, stand for four hours, and walk for three hours with rest.  Id. at HART0955-0956.  In August 2000, Dr. Eng completed another APS form, noting that Dorholt could not stand, walk, sit, lift, carry, push, pull, or drive for more than fifteen to thirty minutes without experiencing pain and could not lift objects heavier than twenty pounds.  Id. at HART00757.  Dr. Eng also noted that Dorholt most likely had permanent injuries with limitations that would last several years.  Id.  At the same time, Dr. Evans provided office notes stating that Dorholt had reinflamed her back injury.  Id. at HART00759.

Dr. Evans continued to see Dorholt on a regular basis and often noted no improvement in Dorholt's level of pain despite the use of medication and physical therapy.  Id. at HART00667, 00689, 00707.  In January 2001, Dorholt had two lumbar epidural steroid injections, which provided no reported pain relief.  Id. at HART00317-00327, 00667.  On April 17, 2001, Hartford reminded Dorholt of the clause in her insurance policy requiring her to be disabled from any

occupation after the two years "own occupation" period of disability.  Dorholt was advised an investigation would be conducted to determine if she continued to qualify for benefits.  Id. at HART00737.  On May 2, 2001, Dr. Evans completed an APS form, opining Dorholt could stand for thirty minutes before pain; could walk, sit, lift, and carry for fifteen minutes before having pain; has increased pain in her neck and back when pushing, pulling, or driving; and could not lift greater than fifteen pounds.  Id. at HART00729.  In an accompanying PCE form, Dr. Evans noted that Dorholt could sit for two hours, stand for one hour, and walk for two hours in an eight hour work day, but also noted that "Patient cannot work [due] to injuries."  Id. at HART00730-00731.

On August 29, 2001, Dr. Evans wrote Dorholt "is not to work more than 4 hours per day, with no repetitive movement of the neck and back, as well as no lifting greater than 20 lbs.  These restrictions will remain in effect until the patient is re-evaluated."  Id. at HART00661.  In office notes from the same day, Dr. Evans stated:

> I think at this point [Dorholt] is ready to go back to work.  I will have her go back to work on her restrictions of no repetitive movement of the neck and back.  She will go back to work at four hour days, five days a week, with a weight restriction of 20 pounds.  I will reevaluate her in six weeks after she finds work.  I did explain to her that I think she will have flare-ups and pain from time to time, but I do think it is time for her to go back to work.

Id. at HART00663.

On September 20, 2001, Dorholt began working part-time at Mainsl Services as a care attendant for disabled children.[2]  Id. at HART0916.  That same day, Hartford referred Dorholt's

---

[2] Dorholt worked at Mainsl until around September 2002, at which time she gave Mainsl notice that she would be leaving her job because she had recently moved, and the longer drive to work was too painful.  Id. at HART00332.  Dorholt related that she was applying for a foster and respite care license so that she could work out of her home, obviating the need for her to drive to

file to the Medical Advisory Group ("MAG") for review to determine whether Dorholt could work an eight hour day. Id. at HART00658. Doctor Ulrich Ehrig ("Dr. Ehrig"), Associate Medical Director for Hartford and a member of MAG, reviewed Dorholt's file and spoke with Dr. Evans. Id. at HART00620. Dr. Ehrig determined that:

> The record does not contain objective evidence of neurological abnormalities that would prevent the claimant from returning to work . . . . The claimant's symptoms have improved to such an extent that she can return to work at this time. The medical record does not provide a basis for a limitation to 4 hours per week and sedentary and light work could be performed for eight hours a day.

Id. at HART00624-00625. Hartford also conducted an employability analysis based on Dorholt's functional capabilities, education, training, and work history, and determined that Dorholt was capable of performing three different occupations: case aide, food-management aide, and comparison shopper.[3] Id. at HART00603.

On December 6, 2001, Hartford notified Dorholt that her long term disability benefits were being terminated based on the information received from: 1) notes from the August 29, 2001 office visit with Dr. Evans, 2) an assessment by a Clinical Case Manager on September 14, 2001, 3) Dr. Ehrig's assessment dated October 26, 2001, 4) time cards for November 2001 showing several days where Dorholt worked more than four hours, and 5) an employability

---

work. Id. Dorholt also attempted to work for a furniture company for a period of less than six months; the record contains a September 20, 2004 letter written by Dr. Evans on Dorholt's behalf, indicating that Dorholt could no longer work at Welcome Furniture because of significant back pain and leg pain. Id. at HART00350.

[3] Dorholt met with a Job Placement Specialist two times between October 2000 and April 2001 for help in finding a new vocation, but the specialist's services ceased when clarification of Dorholt's medical status was needed. Id. at 00719, 00742.

analysis from December 3, 2001.[4]  Id. at HART00599.  Hartford concluded Dorholt was capable of sedentary to light work on a full-time basis with limitations: no lifting more than twenty pounds, and no repetitive neck and back movements.  Id.  Dorholt's attorney immediately contacted Hartford to discuss reinstating her benefits.  Id. at HART00560, 00591.  In addition, Dorholt saw Dr. Evans again for treatment.

> On December 20, 2001, Dr. Evans wrote to Hartford, stating:
>
> My comments in my previous records do not imply and should not have been interpreted that Ms. [Dorholt] has recovered from her injuries sufficiently that she will be able to work full time at gainful and competitive employment.  I still feel that Ms. [Dorholt] has significant permanent injury from which she will she will never recover.  The effects of her neck and back injuries are to the extent that any time that she will sit, stand or use her neck or back in repetitive movements too long, she will be subjected to flare-ups of her pain and spasming in her neck and back area.  I feel that it is medically necessary to advise her from refraining from those type[s] of activities and to limit her work on a sustained, competitive basis to no more than four hours a day.

Id. at HART00586.  Dr. Eng also wrote to Hartford, stating that Dorholt is not able to work more than four hours at a time and requesting that Dorholt's benefits be reinstated.  Id. at HART00572-00573.  As a result, Hartford reevaluated Dorholt's claim by arranging an Independent Medical Exam ("IME") of Dorholt with Doctor Bruce Van Dyne ("Dr. Van Dyne").  Id. at HART00554.

Dr. Van Dyne, a neurologist, examined Dorholt on January 30, 2002 and reviewed her medical records.  Dr. Van Dyne determined that Dorholt's car accident "resulted in musculoligamentous cervical and lumbar strains superimposed upon significant pre-existent

---

[4] Hartford sent a letter, dated September 12, 2001, to the benefits representative at NMHC, stating that Dorholt's long term disability benefits would be denied after November 30, 2001, and that Dorholt had been notified of the decision.  Id. at HART00602.  The date on the letter appears to be a typographical error since Hartford's benefits determination was based on reviews and events that occurred after September 12.

cervical and lumbar degenerative disc disease" and that Dorholt did not have "any specific objective abnormal findings on examination that would clearly substantiate her cervical spine area symptoms, which are most likely primarily related to her pre-existent cervical spondylosis." Id. at HART00531. It was his opinion that:

> [Dorholt] is capable of full-time employment with mild restrictions. The need for those restrictions is primarily related to her demonstrated multilevel degenerative disc disease and I feel appropriate restrictions are that she not work in a job that would require frequent stooping, bending, or lifting, although I feel that she could carry out such activity on an occasional basis. I would also limit her lifting and carrying to no lifting or carrying of greater than 35 pounds and she shouldn't work in a job that would require frequent overhead lifting and frequent or sustained neck extension. I would also recommend that if she is working in a job that is performed primarily in sitting or standing position that she be able to briefly change position at least once per hour.

Id. at HART00532. Dr. Evans, in a letter to Hartford in response to Dr. Van Dyne's IME, expressed disagreement with Dr. Van Dyne's opinion of employability. Dr. Evans maintains Dorholt needs significant restrictions and should work only on a part time basis. Id. at HART00493-00494.

On June 10, 2002, Hartford advised Dorholt's attorney that upon review of the additional documentation submitted as well as Dorholt's previous record, Hartford was maintaining its decision to deny long term disability benefits. Id. at HART00444-00447. On August 29, 2002, Dr. Evans referred Dorholt for a Functional Capacity Evaluation ("FCE"). Theresa Schreder ("Schreder"), the evaluator, concluded after tests and evaluation that Dorholt was "able to work at the light physical demand level if allowed to take breaks from sitting, standing and walking as specified in this FCE and provided that recommendations for maximum lifts and precautions are followed." Id. at HART00335. Schreder recommended that Dorholt avoid: 1) carrying more than 17 pounds at a time, 2) repetitive lifting and reaching, 3) twisting, 4) repetitive fine motor

work with the hands, 5) jobs that involve a significant amount of driving, and 6) driving more than 30 minutes to or from her work destination. Id. at HART00336.

In December 2002, Dorholt appealed the denial of continued benefits. Id. at HART00433. In response, Hartford sent Dorholt's file to the University Disability Consortium ("UDC") for another review. Id. at HART00432. UDC neurologist Randall B. King ("Dr. King") reviewed Dorholt's records and spoke with Dr. Evans. Id. at HART00417-00425. Dr. King's attempt to speak with Dr. Eng over the phone was limited by Dr. Eng's condition that he would respond only to written questions. Id. at HART00422. Dr. King concluded that no objective evidence supported the diagnosis of cervical and lumbar radiculopathy, Dr. Evan's original diagnosis was based on an erroneous interpretation of the electrophysiological data, and there was no objective evidence to preclude full-time employment with minor restrictions as outlined by Dr. Van Dyne. Id. at HART00417-00425. On February 26, 2003, Hartford denied Dorholt's appeal for the final time, advising her that her claim was now closed and her recourse was to file a civil action.[5] Id. at HART00411-00414.

In August 2004, Dr. Evans referred Dorholt to Doctor Edward G. Hames, III of Neurosurgical Associates, Ltd., who diagnosed Dorholt as having significant degenerative lumbar disc disease, and referred Dorholt to Doctor Manny Pinto ("Dr. Pinto") of the Twin

---

[5] After the final denial, Dorholt continued to submit information to Hartford, and that information is discussed in the remaining portion of the Background section of this Order. At oral argument, Hartford's counsel represented that all documents sent to Hartford by Dorholt were submitted to the Court for consideration, but Hartford did not consider or rely on any information that was sent to them after February 26, 2003, the date of the final denial of Dorholt's claim, in their benefits determination. Therefore, that information is not technically part of the administrative record. See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).

Cities Spine Center to discuss surgical options. Id. at HART00353. Dr. Pinto assessed Dorholt as having degenerative disc disease and a right-side herniated disc, and ordered discograms to further analyze the cause of her symptoms. Id. at HART00354-00356. Dr. Pinto discussed surgery with Dorholt, explaining "there is a reasonabl[e] probability that surgery can make her better but she will have restrictions. She should only proceed with surgery if her symptoms are very severe, unrelenting, and unresponsive to conservative care." Id. at HART00356.

On February 1, 2005, Dr. Evans wrote to Hartford again to respond and disagree with the diagnoses of Drs. Ehrig, Van Dyne, and King. Id. at HART00257-00258. Dr. Evans cautioned her comments about Dorholt being able to return to work were offered in the context of a trial basis to determine how Dorholt would respond to a work situation. Id. Dr. Evans noted that "Dorholt did not last more than six months in this working arrangement because of severe back pain and neck pain." Id. Dr. Evans also stated:

> I have seen Ms. Dorholt make many attempts to go back to work and then not be able to work because of severely limiting neck and back pain. It is very hard for a person to work even in a sedentary job with significant degenerative disc disease because of static positioning and long hours bending and stooping at a desk. I do not believe in my medical opinion that Ms. Dorholt can be competitively employed with her physical limitations.

Id. On February 22, 2005, Dorholt filed this lawsuit. Id. at HART00228-00230.

## III. DISCUSSION

**A.      Standard of Review for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec.

9

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.       Denial of Benefits Determination**

ERISA provides a plan participant with the right "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that when a plan gives an administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an administrator's decision is to be reviewed for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). However, the Eighth Circuit applies a less deferential, sliding scale standard of review when the plaintiff has presented "material, probative evidence demonstrating that: 1) a palpable conflict of interest or a serious procedural irregularity existed, which 2) caused a serious breach of the plan administrator's fiduciary duty." Woo, 144 F.3d at 1160. Here, there is no dispute that Hartford had discretionary authority under the terms of the plan. Therefore, the abuse of discretion standard applies unless Plaintiff can show that the less deferential standard should be applied.

**1.       Palpable Conflict of Interest**

10

The Eighth Circuit has recognized that when the insurer is also the plan administrator, "something akin to a rebuttable presumption of a palpable conflict of interest" exists. Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 947-48 (8th Cir. 2000). "Indicia of bias can be negated by 'ameliorating circumstances' such as 'equally compelling long-term business concerns' that militate against improperly denying benefits despite the dual role." Id. at 948, citing Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 588 (8th Cir. 1999). However, the Eighth Circuit has also stated that "not every funding conflict of interest . . . warrants heightened review because ERISA itself contemplates the use of fiduciaries who might not be entirely neutral," Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002), and "it is wrong to assume a financial conflict of interest from the fact that a plan administrator is also the insurer." McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1030 (8th Cir. 2000).

The Eighth Circuit has not definitively determined whether the plaintiff has the burden of producing actual evidence of a financial conflict, or whether the defendant, after the plaintiff has alleged that the defendant is both the insurer and the administrator, has the burden of producing evidence to rebut the presumption of conflict of interest. Compare McGarrah, 234 F.3d at 1030, with Schatz, 220 F.3d at 947-48, and Phillips-Foster v. UNUM Life Ins. Co. of America, 302 F.3d 785, 795 (8th Cir. 2002), and Torres v. UNUM Life Ins. Co. of America, 405 F.3d 670, 678 (8th Cir. 2005). In this case, Plaintiff has the allegation of a financial conflict based on Hartford's dual role as both insurer and administrator, but has produced no evidence that this dual role influenced Hartford's decision to deny benefits. While Defendant has produced no evidence to directly rebut Plaintiff's assertions of a conflict, Defendant's dual role does not appear to have influenced its decision in this case or to have created a palpable conflict of

11

interest. Hartford's consideration of extensive evidence submitted by Dorholt's treating physicians as well as Hartford's decision to obtain two medical record reviews and an independent medical examination dissipate the allegations of a conflict of interest.

### 2. Serious Procedural Irregularity

Dorholt argues that Hartford committed three procedural irregularities in reviewing her claim: 1) Drs. Ehrig, Van Dyne, and King did not review all of the evidence in the record and relied on a lack of objective evidence while refusing to credit Dorholt's subjective symptoms, 2) Hartford did not consider the entire record when making its benefits determination and failed to credit Dorholt's subjective evidence of pain, and 3) Hartford prejudged Dorholt's claim before making its benefits determination by "red flagging" her file, placing her under surveillance, and sending her employer a letter with notice of Dorholt's denial of benefits three months before notifying Dorholt or completing the review. Hartford responds in part that all of the evidence in the administrative record was considered; Hartford made a determination that Dorholt's medical record warranted a finding that she was capable of working full time.

The Eighth Circuit has recently reiterated that a serious procedural irregularity exists when the plan administrator "acts dishonestly, or from an improper motive or . . . fails to use judgment in reaching [a] decision . . . . such that it was the product of an arbitrary decision or the plan administrator's whim." Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, ___ (8th Cir. 2006).[6] In Pralutsky, the Eighth Circuit identified situations when a plan administrator acts in a way that a serious procedural irregularity occurs, such as "fail[ing] to inquire into the relevant circumstances at issue, or never offer[ing] a written decision that can be reviewed, or

---

[6] Specific page references are not yet available for the Pralutsky decision.

committ[ing] irregularities so severe that the court has a total lack of faith in the integrity of the decision making process." Id.

In this case, Dorholt has failed to establish that a procedural irregularity occurred. On review of the administrative record, there is no evidence that the doctors retained by Hartford or Hartford itself did not review the medical records submitted by Dorholt or failed to credit her subjective reports of pain. To the contrary, it is evident that records and opinions submitted by Dorholt were considered, and all three doctors retained by Hartford agreed with Dorholt's physicians that she suffered from degenerative disc disease. The Hartford doctors, and Hartford itself, determined after a review of all the evidence that Dorholt's condition, which prevented her from working in her previous job as a paramedic, did not preclude her from working full time in a sedentary job.

There is also no evidence that Hartford prejudged Dorholt's claim. While there are internal emails documenting that Dorholt's claim raised a "red flag," and Hartford did attempt to conduct surveillance of Dorholt for a short time, such activity does not demonstrate that Hartford denied Dorholt's claim before considering all the evidence. Instead, such activity demonstrates that Hartford was attempting to collect as much evidence as possible before making its benefits determination. Also, as previously noted, Hartford's letter to Dorholt's former employer dated September 12, 2001, announcing that Dorholt's benefits would be terminated, bears strong indicia of being misdated. Hartford's benefits determination discusses an employability analysis, Dr. Ehrig's records review, an assessment by a Clinical Case Manager, and time cards showing several days where Dorholt worked more than four hours—all events that occurred after the September 12 letter date. In addition, the September 12 letter is placed in the chronological

administrative record between the employability analysis report dated December 3, 2001, and a letter dated December 6, 2001, further suggesting that the September 12 letter was misdated.

Finally, Hartford's reliance on a lack of objective evidence did not create a procedural irregularity. Dorholt alleges that it is procedural error to require objective evidence when the plan documents require only "proof of loss" and do not specify "objective evidence." However, Hartford did not require that Dorholt submit only objective evidence of disability and did credit her subjective complaints. In addition, where objective tests can be used to aid in the diagnosis of a disease or ailment, it is reasonable for a plan administrator to require objective proof. See Pralutsky, 435 F.3d at ___. The record reflects consideration of all the evidence and the conclusion that the objective evidence did not support Dorholt's subjective complaints.

The Eighth Circuit, in the context of ERISA, engages in a case-specific analysis with regard to the particular claims and policy language before it. Compare House v. The Paul Revere Life Ins. Co., 241 F.3d 1045 (8th Cir. 2001), and Walke v. Group Long Term Disability Ins., 256 F.3d 835 (8th Cir. 2001), with Coker v. Metro. Life Ins. Co., 281 F.3d 793 (8th Cir. 2002), and McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921 (8th Cir. 2004). The Eighth Circuit recently held that even without any specific plan language, "an administrator may deny benefits based on a lack of objective evidence of disability." Hunt v. Metro. Life Ins. Co., 425 F.3d 489, 491 (8th Cir. 2005) (Bye, J., dissenting). Here, where the plan fails to preclude objective evidence as a type of "proof" that can be required to establish disability, and where objective evidence may assist in determining the cause and extent of Dorholt's condition, it was not a serious procedural irregularity or unreasonable for Hartford to rely on a lack of objective evidence. See Tostrud Aff. at HART00187.

14

### 3. Abuse of Discretion

Because Dorholt has failed to establish the first prong of the less deferential Woo test, the abuse of discretion standard applies in this case. Dorholt alleges that Hartford abused its discretion in denying her claim for long term disability benefits by unreasonably prejudging her claim, relying on a lack of objective evidence, and ignoring the substantial evidence supplied by Dorholt's treating physicians. Hartford responds the Court is bound to apply a deferential standard of review to Hartford's decision and uphold the decision if it was reasonable. Here, it was reasonable for Hartford to accept the conclusions of Drs. Ehrig, Van Dyne, and King, who all concluded that Dorholt is capable of working a full time sedentary job, even given her degenerative disc disease.

"Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence." Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 887 (8th Cir. 2002). Substantial evidence is defined as "more than a scintilla, but less than a preponderance," Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 828 (8th Cir. 2001), and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Delta Family-Care Disability and Survivorship Plan v. Marshall, 258 F.3d 834, 841 (8th Cir. 2001). Hartford's decision:

> is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision. Put another way, the [plan administrator's] decision need not be the only sensible interpretation, so long as its decision offers a reasoned explanation, based on the evidence, for a particular outcome. If the [plan administrator's] decision offers a reasonable explanation, [its] decision should not be disturbed even if another reasonable, but different, interpretation may be made.

Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996) (emphasis in the original), abrogated on

other grounds, Black & Decker Disability Plan v. Nord, 538 U.S. 822, 828-29 (2003). "A plan administrator's discretionary decision is not unreasonable merely because the reviewing court disagrees with it." Coker, 281 F.3d at 797.

In addition, the Supreme Court has held that ERISA plan administrators are not required to give special deference to the opinions of treating physicians. Black & Decker, 538 U.S. at 825; Hunt, 425 F.3d at 491. The Eighth Circuit has stated that "where there is a conflict of opinion, the plan administrator does not abuse his discretion in finding that the employee is not disabled." Clapp, 262 F.3d at 829. Reviewing courts look at both the quantity and quality of evidence before the plan administrator. Smith v. UNUM Life Ins. Co. of America, 305 F.3d 789, 794 (8th Cir. 2002).

In this case, Hartford did not abuse its discretion in finding Dorholt was not disabled for continued disability benefits within the meaning of the ERISA plan. Dorholt presented considerable evidence—including doctors notes and letters from two treating physicians,[7] MRI results, an FCE, and evidence of lumbar epidural steroid injections—in support of her contention that she suffers from degenerative disc disease and experiences severe pain that limits her daily activities. However, at issue is not whether she has degenerative disc disease or whether she experiences pain, but whether her condition prohibits her from working a full time sedentary-type job. Two reviewing doctors, Drs. Ehrig and King, and one independent examiner, Dr. Van Dyne, all concluded that while Dorholt did suffer from degenerative disc disease, she was not

---

[7] Although Dorholt presented doctors notes and letters from four treating physicians, information from two of the doctors was provided after the close of the administrative record and therefore may not be considered by the Court. See Brown, 140 F.3d at 1200.

prevented from working eight hours per day in a sedentary job with mild restrictions.[8] They reached this conclusion upon reviewing Dorholt's medical records, talking with Dr. Evans, and in the case of Dr. Van Dyne, actually examining Dorholt. While the reviewing and independent doctors disagree with Dorholt's treating doctors about her ability to work full time, Hartford is not required to give treating physicians any special deference and does not abuse its discretion by finding that Dorholt is not disabled within the meaning of the ERISA plan. While the Court sympathizes with Dorholt's condition and is convinced she still has considerable pain, in light of the deferential standard of review, Hartford's decision to discontinue Dorholt's benefits was supported by substantial evidence. See Smith, 305 F.3d at 796.

---

[8] In her responsive memorandum, Dorholt insists that it is not reasonable to rely on the reviewing physicians because Dr. Ehrig's specialty is internal medicine not neurology, and Dr. King's Maryland medical license expired five months before he reviewed Dorholt's records. Pl.'s Resp. Mem. [Docket No. 24] at 4-5. The issue of whether these factors discredit the opinions of these physicians is not reached here because the allegations are not a part of the administrative record. See Brown, 140 F.3d at 1200.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 18] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [Docket No. 13] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                              BY THE COURT:


                                              s/Ann D. Montgomery
                                              ANN D. MONTGOMERY
                                              U.S. DISTRICT JUDGE

Dated:  February 28, 2006.